## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ZURICH AMERICAN INSURANCE
COMPANY,
    1299 Zurich Way
    Schaumburg, IL 60196

                *Plaintiff*,

    vs.

KNIGHTSBRIDGE MANAGEMENT, INC. T/A
KNIGHTSBRIDGE RESTAURANT GROUP;
ARDEO LLC T/A SABABA/BINDAAS;
BOMBAY CLUB, INC.; OVAL ROOM, LLC;
RASIKA, LLC; BIBIANA, LLC T/A MODENA;
RASIKA WEST END, LLC; AB, LLC T/A
OLIVIA; BINDAAS 2000 PENN LLC T/A
BINDAAS; and ANNABELLE, LLC,

                *Defendants*.

Case No. 20-cv-3371

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Zurich American Insurance Company ("Zurich"), for its Complaint for Declaratory Judgment against Defendants Knightsbridge Management, Inc. t/a Knightsbridge Restaurant Group ("Knightsbridge"), Ardeo LLC t/a Sababa/Bindaas ("Ardeo"), Bombay Club, Inc. ("Bombay Club"), Oval Room, LLC ("Oval Room"), Rasika, LLC ("Rasika"), Bibiana, LLC t/a Modena ("Bibiana"), Rasika West End, LLC ("West End"), AB, LLC t/a Olivia ("AB"), Bindaas 2000 Penn LLC t/a Bindaas ("Bindaas"), and Annabelle, LLC ("Annabelle") (collectively "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.    Zurich seeks a declaratory judgment that the Property Portfolio Protection Policy it issued to Knightsbridge Corporation and other named insureds (including Defendants) does not

cover the Defendants' alleged losses at their Washington, D.C., restaurants arising out of the SARS-CoV-2 virus pandemic.

2.    Among other reasons, Defendants' alleged losses are not covered because the SARS-CoV-2 virus, which causes the disease COVID-19, does not cause direct physical loss of or damage to property as required for coverage under the Zurich Policy and because the Zurich Policy excludes coverage for all losses caused by a "virus" like the SARS-CoV-2 virus.

## THE PARTIES

3.    Zurich is a New York corporation engaged in the insurance business with a statutory home office located at 4 World Trade Center, 150 Greenwich Street, New York, NY 10007, and its principal place of business located at 1299 Zurich Way, Schaumburg, IL 60196.

4.    Each Defendant is a business operating a restaurant located in Washington, D.C.

5.    Knightsbridge is incorporated under the laws of the District of Columbia with its principal place of business in the District of Columbia.

6.    Bombay Club is incorporated under the laws of the Delaware, and its principal place of business in the District of Columbia.

7.    Zurich has conducted a good faith investigation to determine the identity and citizenship of the individuals who are members of the limited liability companies that are Defendants in this case, by obtaining public records for each of those limited liability companies.

8.    Ardeo is a District of Columbia limited liability company.

9.    Public records show that Ashok Bajaj is the "beneficial owner" of Ardeo and that he has a Washington D.C. address.

10.    Oval Room is a District of Columbia limited liability company.

11.     Public records show that Ashok Bajaj is the "beneficial owner" of Oval Room and that he has a Washington D.C. address.

12.     Rasika is a District of Columbia limited liability company.

13.     Public records show that Ashok Bajaj is the "beneficial owner" of Rasika and that he has a Washington D.C. address.

14.     Bibiana is a District of Columbia limited liability company.

15.     Public records show that Ashok Bajaj is the "beneficial owner" of Bibiana and that he has a Washington D.C. address.

16.     West End is a District of Columbia limited liability company.

17.     Public records show that Ashok Bajaj is the "beneficial owner" of West End and that he has a Washington D.C. address.

18.     AB is a District of Columbia limited liability company.

19.     Public records show that Ashok Bajaj, Dennis Davison, and Erin Sharkey are the "beneficial owners" of AB and that they each have a Washington D.C. address.

20.     Bindaas is a District of Columbia limited liability company.

21.     Public records show that Ashok Bajaj and Dennis Davison are the "beneficial owners" of Bindaas and that Ashok Bajaj has a Washington D.C. address and that Dennis Davison has a Bethesda, Maryland address.

22.     Annabelle is a District of Columbia limited liability company.

23.     Public records show that Ashok Bajaj and Richard Levin are the "beneficial owners" of Annabelle and that they each have a Washington D.C. address.

## JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the Parties are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

25.     This Court has personal jurisdiction over each Defendant because they are citizens of the District of Columbia.

26.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because each Defendant resides in this district and because a part of the events or omissions giving rise to the claim occurred in this district.

## DEFENDANTS' CLAIM FOR COVERAGE

27.     Defendants operate 10 restaurants located only in the District of Columbia.

28.     On June 9, 2020, Defendants advised Zurich that due to the outbreak of the SARS-CoV-2 virus, which causes the disease COVID-19, and the resulting restriction orders issued by District of Columbia government officials and agencies, Defendants temporarily ceased dine-in services at their restaurants and, in some instances, closed their restaurants, causing a loss of revenue.

29.     Defendants' June 9, 2020 notice advised Zurich that "[i]t isn't 'damage to' that is being reported; it is 'loss of' – the insured has lost the ability to provide seated fine dining at each of the impacted locations, which is the primary revenue generator for each restaurant."

30.     Defendants' June 9, 2020 notice specified the "loss type" as "loss of business income and extra expense claim."

31.     Defendants' June 9, 2020 notice also estimated Defendants' losses as "approaching $2M" and lists the loss location as Washington, D.C.

4

32.     Defendants sought coverage under Zurich Property Portfolio Protection Policy, policy number CPO 0804216-00, issued to Knightsbridge Corporation for the policy period December 8, 2019 to December 8, 2020, a certified copy of which is attached hereto as Exhibit 1 ("the Policy").

33.     Based on the information Defendants had provided, on August 6, 2020, Zurich sent a letter to Knightsbridge Corporation advising that their claim was not covered under the Policy including for the following reasons: (1) there has been no direct physical loss of or damage to property caused by a "covered cause of loss"; (2) coverage is barred by the "Microorganisms Exclusion" applicable to loss or damage consisting of, directly or indirectly caused by, contributed to, or aggravated by the presence, growth, proliferation, spread, or any activity of "microorganisms," which is defined to include "virus"; (3) loss of business income that takes place during any idle period would not be covered; and (4) the "Loss of Market of Delay" exclusion bars coverage to the extent Defendants' losses were caused by or resulted from loss of market, loss of use, or delay.

**DEFENDANTS' ST. CLAIR COUNTY, ILLINOIS LAWSUIT**

34.     On October 26, 2020, Defendants filed a lawsuit against Zurich in the Circuit Court of St. Clair County, Illinois (in southern Illinois, just east of St. Louis, Missouri), styled *Knightsbridge Management, Inc. et al. v. Zurich American Insurance Company,* Case No, 20-L-0832 (the "Knightsbridge Lawsuit").   A true and correct copy of the complaint in the Knightsbridge Lawsuit is attached as Exhibit 2.

35.     None of the Defendants, based in Washington, D.C., or their restaurants have any connection to St. Clair County, Illinois.

5

36.     While Zurich's principal place of business is in Illinois, it is in suburban Chicago, approximately 310 miles from St. Clair County, Illinois.  St. Clair County, Illinois, is further from Zurich's principal place of business than New York is from Washington, D.C. (approximately 232 miles).

37.     St. Clair County, Illinois, has no connection to the transactions, occurrences, parties or witnesses at issue in the Knightsbridge Lawsuit.

38.     On November 3, 2020, prior to being served with the Knightsbridge Complaint, Zurich removed the Knightsbridge Lawsuit to the United States District Court for the Southern District of Illinois, where it is currently pending under Case No. 3:20-cv-01165.

39.     Zurich intends to file a Motion to Transfer the Knightsbridge Lawsuit from the Southern District of Illinois to this Court pursuant to 28 U.S.C. § 1404.

40.     An actual controversy within the meaning of 28 U.S.C. § 2201 exists among the parties regarding whether Policy covers the Defendants' SARS-CoV-2 virus claims.

## THE TERMS OF THE ZURICH POLICY

41.     The Policy includes a Real and Personal Property Coverage Form, which contains the following insuring agreement:

**A.     COVERAGE**

We will pay for direct physical loss of or damage to "real property" and "personal property" at a "premises" directly caused by a "covered cause of loss". We will not pay more in any one occurrence than the applicable Limit of Insurance shown on the Declarations for such loss of or damage to Covered Property at that "premises".

Ex. 1 at ZAIC_00000072.

42.     The Policy defines "covered cause of loss" in relevant part as "a fortuitous cause or event, not otherwise excluded, which actually occurs during this policy period."  Ex. 1 at ZAIC_00000054-55.

43.     The Real and Personal Property Coverage Form lists certain "Excluded Causes of Loss" including the following:

**B.     EXCLUDED CAUSES OF LOSS**

****

**9.     Governmental Action**

We will not pay for loss or damage caused directly or indirectly by any seizure, confiscation, expropriation, nationalization, or destruction of property by order of governmental authority. Such loss or damage is excluded regardless of any other cause or event, including a "mistake", "malfunction", or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.

****

**11.     Loss of Market or Delay**

We will not pay for loss or damage caused by or resulting from loss of market, loss of use, or delay. This exclusion applies even if one of these excluded causes of loss was caused by or resulted from a "mistake" or "malfunction".

**12.     Microorganisms**

We will not pay for loss or damage consisting of, directly or indirectly caused by, contributed to, or aggravated by the presence, growth, proliferation, spread, or any activity of "microorganisms", unless resulting from fire or lightning. Such loss or damage is excluded regardless of any other cause or event, including a "mistake", "malfunction", or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.

But if a result of one of these excluded causes of loss is a "specified cause of loss", other than fire or lightning, we will pay that portion of the loss or damage which is solely caused by that "specified cause of loss".

> We will also not pay for loss, cost, or expense arising out of any request, demand, order, or statutory or regulatory requirement that requires any insured or others to test for, monitor, clean up, remove, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of "microorganisms".

Ex. 1 at ZAIC_00000072-74.

44.     The Policy defines "microorganisms" as "any type or form of organism of microscopic or ultramicroscopic size including, but not limited to, 'fungus', wet or dry rot, **<u>virus</u>**, algae, or bacteria, or any by-product."  Ex. 1 at ZAIC_00000059 (emphasis added).

45.     The Policy also includes a Business Income Coverage Form, which contains the following insuring agreement:

**A.     COVERAGE**

> We will pay for the actual loss of "business income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at a "premises" at which a Limit of Insurance is shown on the Declarations for Business Income. The loss or damage must be directly caused by a "covered cause of loss". We will not pay more than the applicable Limit of Insurance shown on the Declarations for Business Income at that "premises".

Ex. 1 at ZAIC_00000136.

46.     The Policy defines "period of restoration" in relevant part as the period of time that begins when:

> a.     The direct physical loss or damage that causes "suspension" of your "operations" occurs; or
>
> b.     The date "operations" would have begun if the start of "operations" is delayed because of loss of or damage to any of the following:
>
>   1)   "Real property", whether complete or under construction;
>
>   2)   Alterations or additions to "real property"; or
>
>   3)   "Personal property":

8

   a) Used in such construction, alterations, or additions;

   b) Incidental to the occupancy of the area intended for construction, alteration, or addition; or

   c) Incidental to the alteration of the occupancy of an existing building or structure.

Ex. 1 at ZAIC_00000062.

47.     The Policy defines "operations" in relevant part as:

   a.     Your business activities occurring at the covered location prior to the physical loss or damage; and

   b.     The covered location is tenantable prior to the physical loss or damage.

Ex. 1 at ZAIC_00000061.

48.     The Business Income Coverage Form also contains the following "Additional Coverages":

## B.     ADDITIONAL COVERAGES

### 1.     Civil Authority

We will pay for the actual loss of "business income" you sustain for up to the number of days shown on the Declarations for Civil Authority resulting from the necessary "suspension", or delay in the start, of your "operations" if the "suspension" or delay is caused by order of civil authority that prohibits access to the "premises" or "reported unscheduled premises". That order must result from a civil authority's response to direct physical loss of or damage to property located within one mile from the "premises" or "reported unscheduled premises" which sustains a "business income" loss. The loss or damage must be directly caused by a "covered cause of loss".

The most we will pay under this Additional Coverage is the Limit of Insurance shown on the Declarations for Business Income at the "premises" or "reported unscheduled premises" where access was prohibited.

Ex. 1 at ZAIC_00000136.

49.     The Business Income Coverage Form contains the following exclusions:

**C.     EXCLUSIONS**

**1.     Real or Personal Property**

The exclusions in paragraphs 6., 7., 8., and 9. below and the excluded causes of loss in the REAL AND PERSONAL PROPERTY COVERAGE FORM, except Off-Premises Service Interruption, apply to loss of "business income" caused by or resulting from loss of or damage to any property other than:

a.   "Fine arts";

b.   "Original information property";

c.   "Outdoor trees, shrubs, plants, or lawns";

d.   "Green roofing systems";

e.   "Personal property" in transit; or

f.   "Scheduled property".

Ex. 1 at ZAIC_00000139.

50.     The Business Income Coverage Form also contains the following "Limitations":

**D.     LIMITATIONS**

**1.     Idle Periods**

We will not pay for loss of "business income" during any period in which business would not or could not have been conducted for any reason other than:

a.   Direct physical loss of or damage to property as described in Section A., Coverage, above;

b.   A civil authority prohibiting access to the "premises" or "reported unscheduled premises" as described in the Civil Authority Additional Coverage above; or

     c.   A physical obstruction affecting ingress or egress to the "premises" or "reported unscheduled premises" as described in the Ingress/Egress Additional Coverage above.

Ex. 1 at ZAIC_00000140.

51.    The Policy also includes an Extra Expense Coverage Form, which contains the following insuring agreement:

**A.**    **COVERAGE**

We will pay for the actual and necessary "extra expense" you incur due to direct physical loss of or damage to property at a "premises" at which a Limit of Insurance is shown for Extra Expense on the Declarations. The loss or damage must be directly caused by a "covered cause of loss". We will not pay more than the applicable Limit of Insurance shown on the Declarations for Extra Expense at that "premises".

Ex. 1 at ZAIC_00000145.

52.    The Extra Expense Coverage Form also contains the following "Additional Coverages":

**B.**    **ADDITIONAL COVERAGES**

**1.**    **Civil Authority**

We will pay for the actual and necessary "extra expense" you incur for up to the number of days shown on the Declarations for Civil Authority when an order of civil authority prohibits access to the "premises" or "reported unscheduled premises". That order must result from a civil authority's response to direct physical loss of or damage to property located within one mile from the "premises" or "reported unscheduled premises" where the "extra expense" was incurred. The loss or damage must be directly caused by a "covered cause of loss".

Ex. 1 at ZAIC_00000145.

53.    The Extra Expense Coverage Form contains the following exclusions:

## C.   EXCLUSIONS

### 1.   Real or Personal Property

The exclusions in paragraphs 4., 5., and 6. below and the excluded causes of loss in the REAL AND PERSONAL PROPERTY COVERAGE FORM, except Off Premises Service Interruption, apply to loss of "extra expense" incurred, caused by or resulting from loss of or damage to any property other than:

a.  "Fine arts";

b.  "Original information property";

c.  "Outdoor trees, shrubs, plants, or lawns"; or

d.  "Green roofing systems";

Ex. 1 at ZAIC_00000146.

54.   The Extra Expense Coverage Form contains the following "Limitations":

## D.   LIMITATIONS

### 1.   Idle Periods

We will not pay for "extra expense" incurred during any period in which business would not or could not have been conducted for any reason other than:

a.   Direct physical loss of or damage to property as described in Section A., Coverage, above;

b.   A civil authority prohibiting access to the "premises" or "reported unscheduled premises" as described in the Civil Authority Additional Coverage above; or

c.   A physical obstruction affecting ingress or egress to the "premises" or "reported unscheduled premises" as described in the Ingress/Egress Additional Coverage above.

Ex. 1 at ZAIC_00000147.

55.     The Policy also includes a Dependent Premises Business Income Coverage--Unscheduled Locations Coverage Form, which provides in part as follows:

**A.      COVERAGE**

The following is added to Section A., Coverage, in the BUSINESS INCOME COVERAGE FORM (EXCLUDING EXTRA EXPENSE) and Section A., Coverages, in the BUSINESS INCOME COVERAGE FORM INCLUDING RESEARCH AND DEVELOPMENT CONTINUING EXPENSES (EXCLUDING EXTRA EXPENSE)--TECHNOLOGY:

We will also pay for the actual loss of "business income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property, including property in the open (or in a vehicle), at a "dependent premises". The loss or damage must be directly caused by a "covered cause of loss".

The most we will pay in any one occurrence is the Limit of Insurance shown on the Declarations for Dependent Premises Business Income--Unscheduled Locations.

**B.      ADDITIONAL COVERAGES**

With respect to a "suspension" of your "operations" caused by direct physical loss of or damage to property, including property in the open (or in a vehicle), at a "dependent premises", the Civil Authority and Contractual Penalties Additional Coverages in the BUSINESS INCOME COVERAGE FORM (EXCLUDING EXTRA EXPENSE) and the BUSINESS INCOME COVERAGE FORM INCLUDING RESEARCH AND DEVELOPMENT CONTINUING EXPENSES (EXCLUDING EXTRA EXPENSE)--TECHNOLOGY are replaced by the following:

**Civil Authority**

We will pay for the actual loss of "business income" you sustain for up to 30 days resulting from the necessary "suspension", or delay in the start, of your "operations" if the "suspension" or delay is caused by order of civil authority that prohibits access to a "dependent premises". That order must result from a civil authority's response to direct physical loss of or damage to property located within one mile from the "dependent premises". The loss or damage must be directly caused by a "covered cause of loss".

The most we will pay under this Additional Coverage is the Limit of Insurance shown on the Declarations for Dependent Premises Business Income-- Unscheduled Locations.

The Limit for this Additional Coverage is included in, and not in addition to, that Limit of Insurance.

****

**E.    DEFINITIONS**

With respect to a "suspension" of "operations" caused by direct physical loss of or damage to property at a "dependent premises," the "period of restoration" definition in the COMMERCIAL PROPERTY DEFINITIONS is replaced by the following:

"Period of restoration" means the period of time that:

a.    Begins when the direct physical loss of or damage to property at a "dependent premises" occurs; and

b.    Ends on the date when the property at that "dependent premises" should be repaired, rebuilt, or replaced with reasonable speed and similar quality.

Ex. 1 at ZAIC_00000149-151.

56.    The Policy defines "dependent premises" as one of the following types of locations:

a.    "Contributing locations";

b.    "Recipient locations";

c.    "Manufacturing locations"; and

d.    "Leader locations".

Ex. 1 at ZAIC_00000055.

57.    The Policy defines those terms as follows:

"Contributing locations" means locations owned and operated by others who:

a.    You depend on to deliver materials or services directly to you, or to others under your contract of sale; or

14

        b.      Pay you royalties, licensing fees, or commissions under written agreements.

"Contributing locations" does not mean:

        a.      Locations owned and operated by others who you depend upon to provide only power, communications, or other utility services to you; or

        b.      "Manufacturing locations".

Ex. 1 at ZAIC_00000054.

"Recipient locations" means locations owned or operated by others, who you depend on to accept your products or services.

Ex. 1 at ZAIC_00000065.

"Manufacturing locations" means locations owned and operated by others who you depend on to manufacture products for delivery to your customers under contract of sale.

Ex. 1 at ZAIC_00000059.

"Leader locations" means locations owned and operated by others who you depend on to attract customers to your business.

Ex. 1 at ZAIC_00000059.

58.    The Real and Personal Property Coverage, Business Income Coverage, Extra Expense Coverage, and Dependent Premises Business Income Coverage--Unscheduled Locations Coverage are referred to collectively as the "Relevant Coverages" below.

## <u>COUNT I</u>
### <u>Declaratory Judgment – No Direct Physical Loss of or Damage to Property</u>

59.    Zurich reasserts and incorporates by reference Paragraphs 1 through 58 as if fully set forth herein.

60.    The Relevant Coverages each potentially provide coverage only for "direct physical loss of or damage to" property caused by a "covered cause of loss."

61.     The SARS-CoV-2 virus did not cause "direct physical loss of or damage to" Defendants' property, any property within one mile of Defendants' property, or a "dependent premises."

62.     In addition, Defendants did not sustain any loss or damage during the "period of restoration" because that period only begins upon "direct physical loss or damage" or when "operations" would have begun if the start of "operations" is delayed because of loss of or damage, and "operations" is defined as the insured's business activities "prior to the physical loss or damage."

63.     Therefore, none of the Relevant Coverages applies to Defendants' claims.

### COUNT II
### Declaratory Judgment – The Microorganisms Exclusion Bars Coverage

64.     Zurich reasserts and incorporates by reference Paragraphs 1 through 63 as if fully set forth herein.

65.     The Relevant Coverages each apply only to a "covered cause of loss."

66.     "Covered cause of loss" is defined in relevant part as "a fortuitous cause or event, not otherwise excluded."

67.     The Relevant Coverages are each subject to the Microorganisms Exclusion (listed under "Excluded Causes of Loss"), which excludes coverage for "loss or damage consisting of, directly or indirectly caused by, contributed to, or aggravated by the presence, growth, proliferation, spread, or any activity of 'microorganisms'."

68.     "Microorganisms" is defined to include "virus."

69.     All of Defendants' alleged losses consist of or were directly or indirectly caused by, contributed to or aggravated by the presence, growth, proliferation, spread or activity of the SARS-CoV-2 virus, which is an excluded cause of loss.

70.     Therefore, the Defendants' alleged losses are not caused by a "covered cause of loss."

## COUNT III
### Declaratory Judgment – The Governmental Action Exclusion Bars Coverage

71.     Zurich reasserts and incorporates by reference Paragraphs 1 through 70 as if fully set forth herein.

72.     The Relevant Coverages each apply only to a "covered cause of loss."

73.     "Covered cause of loss" is defined in relevant part as "a fortuitous cause or event, not otherwise excluded."

74.     The Relevant Coverages are each subject to the Governmental Action Exclusion, which excludes coverage for "loss or damage caused directly or indirectly by any seizure, confiscation, expropriation, nationalization, or destruction of property by order of governmental authority."

75.     To the extent Defendants' losses were caused directly or indirectly by any seizure, confiscation, expropriation, nationalization, or destruction of property by order of governmental authority, the Governmental Action Exclusion bars coverage.

## COUNT IV
### Declaratory Judgment – The Loss of Market of Delay Exclusion Bars Coverage

76.     Zurich reasserts and incorporates by reference Paragraphs 1 through 75 as if fully set forth herein.

77.     The Relevant Coverages each apply only to a "covered cause of loss."

78.     "Covered cause of loss" is defined in relevant part as "a fortuitous cause or event, not otherwise excluded."

79.     The Relevant Coverages are each subject to the Loss of Market or Delay Exclusion, which excludes coverage for "loss or damage caused by or resulting from loss of market, loss of use, or delay."

80.     To the extent Defendants' losses were caused by a loss of market, loss of use, or delay, the Loss of Market or Delay Exclusion bars coverage.

## COUNT V
### Declaratory Judgment – Rights and Obligations Under the Terms of the Policy

81.     Zurich reasserts and incorporates by reference Paragraphs 1 through 80 as if fully set forth herein.

82.     Zurich is entitled to a declaration regarding the parties' rights and obligations under the terms of the Policy with respect to the Defendants' claims for coverage.

83.     Specifically, Zurich is entitled to a declaration that the Policy does not provide coverage for Defendants' alleged losses arising out of the SARS-CoV-2 virus.

## REQUEST FOR RELIEF

WHEREFORE, for the reasons set forth above, Zurich respectfully requests that this Court issue a declaratory judgment in its favor declaring that Defendants are not entitled to coverage under the Policy and provide any other relief that the Court deems just and proper.

Dated: November 20, 2020

Respectfully submitted,

CLYDE & CO US LLP

Attorneys for Defendant Zurich
American Insurance Company

By: /s/*Patrick F. Hofer*_____
Patrick F. Hofer (412665)
Clyde & Co US LLP
1775 Pennsylvania Avenue, N.W.
Suite 400
Washington, D.C. 20006-1040
T: (202) 747-5110
F: (202) 747-5150
E: patrick.hofer@clydeco.us